UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Thurman Caplinger**, an individual, on
behalf of himself and those similarly-situated,

      Plaintiff,                                                    Case No.

v.                                                                              **JURY DEMAND**

**A.J.M. Packaging Corporation**,
a Domestic Profit Corporation,
and **Robert A. Epstein**, Individually,

      Defendants.

_____/

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Thurman Caplinger ("Plaintiff") on behalf of himself and all other similarly situated current and former employees, files this Collective Action Complaint against Defendants, A.J.M. Packaging Corporation ("AJM"), and Robert A. Epstein ("Epstein") (collectively "Defendants") pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*., ("FLSA"), and states as follows:

### INTRODUCTION

1.  The FLSA aims to achieve a uniform national compensation policy, with courts safeguarding against employers circumventing its requirements to gain competitive advantages. *Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603, 606 (6th Cir. 2013). The statute's compensation policy also protects employees from

"the wear and tear of extra work" by requiring employers to pay employees a rate of one and a half their hourly rate when they work over 40 hours a week. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948). The regular rate is the hourly rate actually paid to the employee for the normal, non-overtime work week for which he is employed. 149 *Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203, 91 L. Ed. 1432, 67 S. Ct. 1178, *modified*, 331 U.S. 795 (1947).

2.      In May 2020, Plaintiff began working as a Maintenance Tech/Millwright for AJM, a manufacturer of paper products owned by Epstein. They ultimately agreed upon a rate of $31/hour as his compensation. Defendants utilized a payment scheme called "Spot Pay" but they did not explain it to Plaintiff. Under Defendants' Spot Pay, Plaintiff earned less than his $31/hour rate for hours worked between 40-45 and earned time and a third for his hours worked over 45. Defendants' Spot Pay is nothing more than an attempt to circumvent the FLSA. This is because Plaintiff was an hourly employee since: (1) he agreed to employment as an hourly employee earning $31/hour; he never knew of, let alone agreed to, a payment scheme that accounted for both his regular and overtime rate; (2) he had no reason to believe he was anything less than hourly because like many of Defendants' employees, his improper overtime rate was explained to him in relation to his hourly rate, specifically, "time and a third" when over 45 hours in a week; (3) Defendants treated him as an hourly employee by routinely deducting his pay when he worked less than

40 hours in a week, and; (4) those deductions made by Defendants' were at his actual hourly rate of $31/hour. For these reasons, Defendants' Spot Pay violates the FLSA by failing to pay Plaintiff and those similarly situated at a rate of time and a half their actual hourly rate when they worked over 40 hours in a workweek.

3.     As a result of Defendants' illegal pay practices, Plaintiff was deprived of proper compensation for his hours worked. Pursuant to 29 U.S.C. § 216(b) Plaintiff brings this action to recover the unpaid wages owed to him and all other similarly situated hourly-paid employees, current and former, of Defendants who worked at any facility owned by Defendants at any time during the three-year period before the Complaint was filed up to the present ("Collective Members"). These Collective Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## JURISDICTION

4.     Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA to recover unpaid worktime and overtime, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

5.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

because Plaintiff resides in this district and all, or at least a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

7.    At all relevant times, Plaintiff was, and continues to be, a resident within the jurisdiction of the Eastern District of Michigan.

8.    Plaintiff was employed by Defendants from May 2020 to March 20, 2023, as a Maintenance Tech/Millwright at Defendants' 11800 Reeck Rd, Southgate, MI 48195 location.

9.    AJM is a Domestic Profit Corporation, with its registered office at E-4111 Andover Rd, Bloomfield Twp, MI 48302.

10.    Epstein is an individual resident of the State of Michigan and is the Owner and President of AJM.

11.    Upon information and belief, Defendants' business operations are located in the Metropolitan Detroit area ("Metro Detroit"), and they regularly conduct business in this jurisdiction.

12.    At all times material to this action, Defendants were, and continue to be, an "enterprise engaged in commerce" and an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

13.    Defendants, were, and continue to be, the "employer" within the meaning of the FLSA.

4

14.     Defendants regularly held and/or exercised authority to:

  a.     hire and fire employees of AJM;

  b.     determine the AJM employees' work schedules, and;

  c.     control the finances and operations of AJM.

15.     Epstein is an employer as defined under the FLSA in that he acted, directly or indirectly, in his and the interests of the AJM—which are unified as one due to his degree of control—towards Plaintiff and others similarly situated.

16.     At all relevant times, Defendants were Plaintiff's "employer" within the meaning of the FLSA.

17.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA.

18.     At all relevant times, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

19.     At all relevant times, the work performed by Plaintiff was directly essential to the business performed by Defendants.

20.     Upon information and belief, the annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time.

21.     At all relevant times, Defendants had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce such as cash registers, telephones, paper plates, and

brown paper bags, which were used directly in furtherance of Defendants' commercial activity of manufacturing paper products for sale at retail outlets such as Amazon, Costco, Walmart, Office Depot, Sears, and more.

## STATEMENT OF FACTS

22.    In May 2020, Plaintiff began employment at AJM as a Maintenance Tech/Millwright, whose job duties included machine repairs, welding, and fabrication.

23.    Plaintiff's $31/hour pay rate was reached through negotiations between the parties.

24.    Plaintiff would never have accepted employment at AJM at an hourly rate of less than $30/hour.

25.    Defendants paid Plaintiff biweekly.

26.    Plaintiff was under the rightful assumption he was an hourly employee because:

      a.    AJM told him his pay rate was $31/hour;

      b.    Plaintiff's $31/hour pay rate was expressly confirmed in the bottom left of his check stub;

      c.    multiplying his $31/hour pay rate equaled his total for any hours worked between 0-40, and;

      d.    AJM did not discuss any other payment scheme during his hiring.

27.     Plaintiff was not aware he was required to work up to an agreed

number of hours per week beyond that of the typical hourly employee.

28.     Plaintiff understood that if he did not work, he would not earn an

income unless he used paid time off ("PTO").

29.     Defendants routinely deducted Plaintiff's pay by the pay rate amount

listed in the bottom left his check stub ("actual hourly rate") if Plaintiff worked less

than 40 hours in a workweek without the use of PTO to cover the difference.[1]

**Exhibit ("Ex.") 1**.

30.     Soon, Plaintiff noticed that while his $31/hour rate correctly added to

his 40-hour total in his pay stub, his overtime rate was not the traditional time and

a half his hourly rate for his hours worked in excess of 40.

31.     Plaintiff raised the subject to Defendants' representative with whom

he interviewed and negotiated his pay rate with, however she never replied to him.

32.     Plaintiff then raised the subject to his peers, who told him that AJM

utilized a policy called "Spot Pay" and as such, employees at AJM earned less than

half their hourly rate for any hours worked between 40-45 and "time and a third"

---

[1] The total of $2,002.65 for 62.72 hours at a rate of $31.93/hr indicates that deductions were made for hours not worked below the standard 80-hour biweekly period. A full 80-hour period at this rate would yield $2,554.40. The difference of $551.75 represents 17.28 hours (80 - 62.72) that were deducted at the $31.93 hourly pay rate, showing the employee was not paid for time not worked below the 40-hour weekly threshold.

for hours worked over 45 instead of the usual time and a half.

33.    Calculating the $31/hour pay rate listed at the bottom of his check stub to his earnings for hours 40-45 confirms he earned less than half his $31/hour pay rate for those hours.[2] *See* **Ex. 2**.

34.    Calculating the $31/hour pay rate listed at the bottom of his check stub to his earnings for hours worked over 45 in a workweek confirms he earned "time and a third" of his $31/hour pay rate for those hours.[3] *See id*.

35.    Numerous employees at AJM complained about the legality of AJM's Spot Pay policy.

36.    In fact, employees at AJM were unclear about how AJM's Spot Pay worked and similar to Plaintiff, they considered themselves hourly employees.

37.    Many employees referred to Spot Pay as "Chinese overtime."

38.    Other employees believed Spot Pay was a 1.3x legal parallel to the FLSA's 1.5x traditional overtime rate over 40 hours worked.

39.    In fact, other employees at AJM understood they were paid time and a third their hourly rate for hours over 45, as evidenced by these anonymous Indeed reviews, both of which were posted while Plaintiff was still employed at AJM:

---

[2] Half of Plaintiff hourly rate is $15.5/hr ($31 ÷ 2 = $15.5). However, calculating his Spot Pay shows his hourly rate to be $13.78 ($137.78 ÷ 10 = $13.78).
[3] $31 ×1.3333219 ("time and a third") = $41.33/hr × 73.47 (number of overtime hour worked) = $3,036.51.

[4]

**1.0**
★☆☆☆☆

**This place is a joke, starting out with management**

Machine Tech (Former Employee) - Joplin, MO - September 23, 2021

*Absolutely horrible place, the time I have worked here has proven to be stressful as a machine adjuster, management is awful and will not care about you, they will work your soul off with* **their spot salary pay** *basically getting paid less then minimum wage after 40 hours for 5 hours and* **after 45 hours you get paid time and a third not time and a half,** *supervisor don't care about workers and will only cover their back, They will bring new people off the street not knowing anything and making almost as much as a person with years of experience, this place is so bad that the manager walked out and quit on them*

✓ Pros

[5]

**1.0**
★☆☆☆☆

**Horrible place**

Machine Technician (Former Employee) - Taylor, MI - April 15, 2020

Literally the worst job I've ever had. They lie to you right from the start. Hired as machine tech and spent 2 months doing everything else but the job i was hired for smh. Got a phone call on an approved day off saying they were terminating me with no explanation. When i called back i was sent straight to voicemail and never heard back. **Salary is a joke, they tell you they pay for your health care but that's another lie.** On salary you work 5 hours a week for minimum wage and overtime is 1.3x instead of 1.5x, and it starts at 45 hours not 40. So basically the more hours you work the less you make per hour. Unless you're starving and desperate stay away!

Was this review helpful?

40.     Toward the end of 2021, AJM distributed an "Update to Spot Pay" memorandum which stated that AJM would end their Spot Pay policy and move to a traditional overtime payout beginning November 29, 2021.

---

[4] *See* Indeed, https://www.indeed.com/cmp/AjmPackaging/reviews?fcountry=ALL &ftopic=paybenefits&start=20 (last visited July 2, 2024).

[5] *See* Indeed, https://www.indeed.com/cmp/AjmPackaging/reviews?fcountry=ALL &ftopic =paybenefits&start=60 (last visited July 2, 2020).

41.    One reason cited in the Update to Spot Pay memorandum for the change was "to bring simplicity" to AJM's overtime pay policy.

42.    However, AJM never moved to a traditional overtime payout because it never ended its Spot Pay policy.

43.    Employees also heard that AJM terminated an employee involved with the push to transition from Spot Pay to traditional overtime.

44.    It was not until AJM terminated Plaintiff the day he returned from federally protected leave that he began questioning whether Defendants' employment practices were legal.

45.    Plaintiff often worked in excess of 40 hours a week, yet Defendants willfully failed to pay him and those similarly situated overtime compensation of one and one-half times their regular hourly rate in violation of the FLSA.

46.    Plaintiff was not paid a salary during his FMLA leave.

47.    Throughout the time of his tenure and continuing until today, Defendants have likewise employed and paid other individuals like Plaintiff under their Spot Pay policy, in violation of the FLSA. However, the exact number of individuals is presently unknown, but can be ascertained thorough discovery since it is within the sole knowledge of Defendants.

48.    Plaintiff's consent to file this action pursuant to 29 U.S.C. § 216(b) is filed as **Ex. 3**.

## COLLECTIVE ACTION ALLEGATIONS

49.    Plaintiff and those similarly situated are/were all hourly-paid employees of Defendants and performed similar manual labor job duties and/or were similarly compensated as one another.

50.    Plaintiff and those similarly situated are/were all hourly-paid employees due to the fact that Defendants routinely made hourly deductions for hours not worked.

51.    Defendants failed to compensate Plaintiff and those similarly situated for the entirety of their worktime.

52.    Defendants failed to properly compensate Plaintiff and those similarly situated a time-and-a-half overtime premium for their hours worked over 40 in workweeks throughout the relevant time period.

53.    The additional persons who may become Plaintiffs in this action are/were hourly-paid employees of the Defendants, who were not properly compensated for their worktime, and who were not compensated for all hours worked resulting in one or more workweeks during the relevant time periods where they worked in excess of forty (40) hours, but did not receive pay at one and one-half times their regular rate for their hours worked in excess of forty (40) hours.

54.    This policy or practice was applicable to Plaintiff and the Collective Members. Application of this policy or practice does/did not depend on the personal

11

circumstances of Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime to Plaintiff applied, and continues to apply, to all collective members. Accordingly, the Collective Members are properly defined as:

> **All hourly-paid employees who worked for Defendants within the last three years, who were subject to Defendants' Spot Pay policy, who were not fully compensated for their worktime in one or more work weeks and/or worked in excess of 40 hours in one or more workweeks but were not compensated at one and one-half times their regular hourly rate of pay for all hours worked in excess of 40 hours in one or more workweeks as required by the FLSA.**

55.    Specifically, despite the fact that numerous employees brought Defendants' illegal policies to Defendants' attention throughout their employment, Defendants have not paid Plaintiff and the Collective Members their proper compensation as required by the FLSA.

56.    Defendants did not act in good faith or reliance upon any of the following in formulating their pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor ("DOL") Wage & Hour Opinion Letters or (d) the Code of Federal Regulations ("Federal Regulations").

57.    Even if Defendants allegedly relied on any Federal Regulations for the aforementioned pay policy, Defendants willfully kept Plaintiff and the Collective Members in the dark by failing to clarify their payment scheme.

58.     Even if Defendants allegedly relied on any Federal Regulations for

the aforementioned pay policy, Defendants willfully ignored DOL Opinion Letters or Federal Regulations which conflicted with their interpretation of the Federal Regulations upon which they relied.

59.    Defendants denied their employees full compensation for their worktime.

60.    During the relevant period, Defendants violated the FLSA by retaining employees in an enterprise engaged in commerce or in the production of goods and services for commerce within the meaning of the FLSA, for one or more workweeks without compensating such employees for their work at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

61.    Defendants' failure to properly compensate their employees for all worktime, and at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek results from Defendants' policy or practice that applies to all similarly situated employees, companywide.

62.    Defendants acted willfully in failing to pay Plaintiff and the Collective Members in accordance with the law.

## COUNT I: VIOLATIONS OF OVERTIME COMPENSATION UNDER THE FLSA

63.    Plaintiff incorporates paragraphs 1-62 as if fully set forth herein.

13

64.     Defendants' practice of paying Plaintiff and the Collective Members less than time and a half their agreed upon hourly rate for all hours worked over 40 hours resulted in improper compensation for all overtime hours worked.  29 U.S.C. §§201 *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

65.     None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all time worked are applicable.

66.     Defendants are not entitled to use any salary-based methodologies of payment as a defense because Plaintiff and the Collective Members were, for all practical purposes, employed as hourly employees due to the fact that Defendants routinely deducted their pay by the pay rate stated in their check stub when they failed to work more than 40 hours in a week without the use of PTO.

67.     Defendants cannot use a salary-based methodology to determine the rate of pay Plaintiff or the Collective Members. They did not calculate that rate properly and/or used a lower rate of pay to underpay for overtime (over 40 hours/week) while using a higher rate for deductions when less than 40 hours were worked, thereby circumventing the FLSA through a "heads I win, tails you lose" scenario. In short, Defendants cannot claim different rates of pay that always benefit them, whether paying or withholding income. Doing so incentivizes employers to circumvent the FLSA to gain a competitive advantage, creating a race to the bottom.

68.     Defendants failed to properly disclose or apprise Plaintiff or the

Collective Members of their statutory rights.

69.     Defendants failed to provide adequate notice and/or failed to remove the lack of clarity permeating the workplace to properly claim Plaintiff or the Collective Members agreed to be paid according to Defendants' pay methodology.

70.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and the Collective Members suffered, and continue to suffer, damages and lost compensation for time worked.

71.     Plaintiff and the Collective Members are entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

72.     At all relevant times, Defendants failed to comply with Title 29 and DOL Regulations with respect to those similarly situated to the named Plaintiff by virtue of the management policy, plan, or decision that failed to properly pay Plaintiff and those similarly situated their proper overtime rate at time and a half of the pay rate stated in their check stub for all hours worked over 40 in a week.

Wherefore, Plaintiff respectfully requests that judgment be entered in his favor against Defendants:

a.     Finding that the hourly rate of Plaintiff and the Collective Members is the rate reflected in their check stub, the same rate Defendants deducted for any hours not worked below forty;

b.      Finding that Plaintiff and the Collective Members were hourly employees because Defendants deducted their pay when they worked less than 40 hours in a week;

c.      Finding that Plaintiff and the Collective Members were hourly employees because they did not enter into an agreement with Defendants to be paid in a methodology other than hourly;

d.      Ruling that Plaintiff and the Collective Members should have earned time and a half at the rate reflected in their check stub (i.e., their hourly wage based on 40 hours) for hours worked between 40 and 45;

e.      Ruling that Plaintiff and the Collective Members should have earned time and a half at their actual hourly rate (i.e., their hourly wage based on 40 hours) for hours worked over 45;

f.      Ruling, in the alternative, that Plaintiff and the Collective Members should have earned time and a half at a rate this Court finds appropriate under the law for hours worked between 40 and 45;

g.      Ordering Certification of this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein, designating Plaintiff as a representative

of the FLSA collective action class, and undersigned counsel as class counsel for the same;

h.  Ordering Defendants to disclose the names and addresses of all collective action class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their right by law to join and participate in this lawsuit;

i.  Granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and collective action class the full amount of damages and liquidated damages available by law;

j.  Awarding Plaintiff and the Collective Members overtime compensation in the amount due to them for their time worked in excess of forty (40) hours per workweek;

k.  Awarding Plaintiff and the Collective Members liquidated damages in an amount equal to the overtime award;

l.  Awarding Plaintiff and the Collective Members reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

m.  Awarding Plaintiff pre-judgment interest; and/or

n.      Ordering any other further relief the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R .Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated: July 10, 2024

Respectfully submitted,

/s/ *Ertis Tereziu*
Ertis Tereziu, Esq. (P84911)
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1953
E-mail: etereziu@forthepeople.com

/s/ *C. Ryan Morgan*
C. Ryan Morgan, Esq. (FBN0015527)
(*pro hac vice forthcoming*)
MORGAN & MORGAN, P.A
20 N. Orange Ave., 15th Floor
Orlando, FL 32802-4979
Telephone:  (407) 420-1414
Facsimile:   (407) 245-3401
E-mail: rmorgan@forthepeople.com

*Attorneys for the Plaintiff and the Class*